UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNETH WILLIAMS,

        Plaintiff,

v.          Case No:  2:16-cv-239-FtM-38MRM

ACCELERATED LEARNING
SOLUTIONS, INC. and
COMMUNITY EDUCATION
PARTNERS, INC.,

        Defendants.
_____/

## **ORDER**[1]

This matter comes before the Court on Defendants Accelerated Learning Solutions, Inc. and Community Education Partners, Inc.'s Motion to Dismiss Plaintiff Kenneth Williams' Amended Complaint filed on April 19, 2016. (Doc. #13). With the Court's leave, Plaintiff filed a response to Defendants' motion on May 13, 2016. (Doc. #19). Defendants' motion is thus ripe for review.

## **BACKGROUND**

Plaintiff's Amended Complaint sets forth the following allegations, which the Court must accept as true. See *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). This case arises out of Plaintiff's former employment as a teacher at a charter school (the "School") operated by Defendants. Defendants hired Plaintiff on February 20, 2013, and fired him

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

sixteen months later. (Doc. #2 at ¶¶ 10, 37). Several incidents at the School deeply unsettled Plaintiff and formed the basis of his current claims. First, he allegedly observed grade tampering. (Doc. #2 at ¶¶ 19-22). For instance, he claims to have been "asked to sign and verify course completion forms that were incomplete and/or inaccurate so as to make it appear that the [S]chool's students were academically successful[.]" (Doc. #2 at ¶ 19). Plaintiff complained about this alleged fraud but "no effective action was taken." (Doc. #2 at ¶ 21).

Second, in September 2013, Plaintiff overheard two colleagues discussing a pregnant student carrying the child of a twenty-nine year old. (Doc. #2 at ¶ 14). Concerned about possible abuse, Plaintiff reported what he overheard to Janet Morris, the School's assistant principal. Plaintiff believed that Morris had alerted Florida's Department of Children and Families Services, as required by law, but Morris never did. Instead, Morris notified Eileen Quinlan, an employee of Defendant Accelerated Learning, who remained silent on the matter. When Plaintiff learned of that silence, he reported the suspected abuse to the appropriate government agency. (Doc. #2 at ¶ 15).

Third, Plaintiff made several complaints about safety and security issues to Defendants and the Florida Department of Education ("DOE"). Among other things, Plaintiff raised concerns about understaffing, unlocked rooms with private student records, and no intercom system. (Doc. #2 at ¶ 16). The DOE referred Plaintiff to a Lee County School District employee who was already investigating the School. On February 26, 2014, the investigator interviewed Plaintiff about his complaints. (Doc. #2 at ¶ 17). During their discussion, Plaintiff further reported that on student-census day, administrators and staff personally drove students to school in order to inflate attendance

and enrollment numbers for purposes of increasing federal funding. (Doc. #2 at ¶ 16). Plaintiff followed up his interview with a written report and documents that allegedly confirmed the School's attendance scheme, along with the other safety violations he had witnessed. (Doc. #2 at ¶ 17).

At some unidentified point during Plaintiff's teaching stint, he suffered a workplace injury that caused a previous musculo-skeletal condition to resurface. (Doc. #2 at ¶¶ 33-34). To help him walk, Plaintiff wore assistive footwear, which became the subject of ridicule. (Doc. #2 at ¶ 34). Plaintiff's supervisor made comments "about [him] wearing women's high heels, being girly, and wearing shoes like a 'little white girl.'" (Doc. #2 at ¶ 34). On April 1, 2014, Plaintiff requested an accommodation "in the form of very brief leave." (Doc. #2 at ¶ 35). Defendants denied the request, unless Plaintiff agreed to execute a backdated memorandum. Plaintiff refused. Several days later, Defendants fired him. (Doc. #2 at ¶ 25).

Nearly one year later, Plaintiff initiated this suit in state court, alleging Defendants fired him because of the complaints he made to the Lee County investigator in violation of Florida's Whistleblower Act, Fla. Stat. § 448.102. (Doc. #1). Plaintiff subsequently filed an Amended Complaint reasserting the whistleblower claim and raising five additional claims. (Doc. #2). Count II alleges that Defendant violated Florida Statute § 39.203 by retaliating against him for reporting child abuse, abandonment, and neglect. Counts III and V allege discrimination in violation of the Americans With Disabilities Act ("ADA") and Florida Civil Rights Act ("FCRA"). And Counts IV and VI allege unlawful retaliation under the ADA and FCRA.

In response to the Amended Complaint, Defendants removed the case to this Court, citing federal question jurisdiction as the basis for the removal. (Doc. #1). Defendants also filed the instant motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, contesting the legal basis for each of Plaintiff's claims. (Doc. #13).

## STANDARD OF REVIEW

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

When deciding a Rule 12(b)(6) motion to dismiss, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This preferential standard of review, however, does not permit all pleadings adorned with facts to survive to the next stage of litigation. The Supreme Court has been clear on this point – a district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts

4

that are merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

## DISCUSSION

### A. Count I – Florida Whistleblower Act

In Count I, Plaintiff alleges to be a whistleblower under the Florida Whistleblower Act, Fla. Stat. § 448.102 ("FWA"). He claims that Defendants unlawfully fired him in retaliation for (1) reporting Defendants' infractions to the Lee County School District, Florida's Department of Children and Families Services, and the Cape Coral Police Department; (2) participating in Lee County's investigation of the School; and (3) refusing to participate in Defendants' other illegal practices. (Doc. #19 at 7-12).

The FWA prohibits a private employer from taking any retaliatory personnel action against an employee because the employee has:

> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102. To state a claim under this statute, a plaintiff must show that (1) he engaged in any of the foregoing protected activity, (2) he suffered a materially adverse employment action, and (3) some causal relation exists between the events. *See*

5

*Rutledge v. SunTrust Bank*, 262 F. App'x 956, 958-59 (11th Cir. 2008). Courts analyze actions brought under the FWA using the same standard as a Title VII retaliation claim. See *Butterworth v. Lab. Corp. of Am. Holdings*, 581 F. App'x 813, 818 (11th Cir. 2014); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).

Defendants' primary argument is that Plaintiff has failed to state a whistleblower claim because nowhere does the Amended Complaint show that the conduct he complained about and revealed to the Lee County investigator was illegal. Thus, he did not engage in statutorily protected activity. According to Defendants, "[t]o properly allege [such a claim], an employee must be able to establish that the conduct being complained of . . . actually violated a law, rule or regulation." (Doc. #13 at 5). This argument raises the threshold question of whether a whistleblower must protest an actual violation of law in order to have protection under the FWA.

There appears to be a split of authority on this issue. Florida's Fourth District Court of Appeals has concluded that the FWA does not require a plaintiff to prove that he objected to or refused to engage in a genuine violation of a law, rule, or regulation, but only that he had a good faith, objectively reasonable belief that his activity was protected by the statute. See *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. Dist. Ct. App. 2013). In contrast, Florida's Second District Court of Appeals recently found that a plaintiff must have "objected to an actual violation of law or . . . refused to participate in an activity that would have been an actual violation of law." *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 465 (Fla. Dist. Ct. App. 2015). Although the *Aery* decision has so far prevailed in federal district courts, *see, e.g.*, *Canalejo v. ADG, LLC*, No. 8:14-cv-17-T-MAP, 2015 WL 4992000, at *1-2 (M.D. Fla. Aug. 19, 2015), these decisions do not offer

definitive guidance since the matter remains unsettled at the state level, *see McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002).

The Court need not weigh in on this issue today. Even assuming Defendants' position is correct, Plaintiff has identified conduct that he objected to that stands in violation of Florida law. For example, Plaintiff alleges he reported instances of staff driving children to school in their private vehicles to inflate attendance numbers. (Doc. #2 at ¶ 16). This practice undoubtedly contravenes Fla. Stat. § 1006.22, which requires schools to use "buses . . . for all regular transportation" except in very limited circumstances not applicable here. Plaintiff also complained that certain staff members did not hold proper teacher certifications as required by Fla. Stat § 1012. (Doc. #2 at ¶ 22). These allegations are sufficient to make a claim that Plaintiff engaged in protected activity covered by the FWA. *See Aery*, 118 So. 3d at 916 (finding employee's complaints that his supervisor was installing used car parts into customers' cars while charging them for new equipment "created a sufficient prima facie showing").

Defendants further argue that, even if Plaintiff complained of unlawful conduct as required, his FWA claim must still be dismissed because he reported only illegal acts of fellow staff members. It is Defendants position that "an employee's report of criminal or illegal behavior committed by another employee is [an] insufficient" foundation for a whistleblower suit. (Doc. #13 at 7). Rather, an employee can seek relief under the FWA only when he complains of conduct "engaged in by his employer." (Doc. #13 at 8).

It is true that the terms of the FWA state "an employee has protection under the Act for objecting to unlawful acts of his **employer**." *Sussan v. Nova Se. Univ.*, 723 So. 2d 933, 934 (Fla. Dist. Ct. App. 1999) (emphasis in original). This language, however,

7

has never been construed to permit only those claims where the plaintiff has complained of violations committed by the employing entity as a whole. A corporation is a legal fiction, and thus an employer can only violate regulations through the actions of its employees. A more logical reading of the statute, and one supported by the case law, is that it was intended to encourage the reporting of violations by any employee acting with the scope of their employment or at the direction of the company. See *Bostain v. Westgate Lakes LLC*, No. 6:11-cv-134-PCF-DAB, 2011 WL 2433503, at *3 (M.D. Fla. June 14, 2011). In such circumstances, the conduct of the offending employee is imputed to the employer. See *Kelleher v. Pall Aeropower Corp.*, No. 8:00-CV-365-T-26EAJ, 2001 WL 485119, at *7 (M.D. Fla. Feb. 8, 2001) (finding that an employer was not responsible for an employee's threats and harassment reported under the FWA where these activities occurred outside the workplace, were unrelated to employment, and thus were outside the legitimate scope of employment). To hold otherwise would allow corporate defendants to avoid the requirements of the FWA by simply shifting blame for unlawful acts to its employees. That cannot be the law. See *Taylor v. Mem'l Health Sys.*, 770 So. 2d 752, 754 (Fla. Dist. Ct. App. 2000) (finding the plaintiff stated a valid claim under the FWA based on allegations that another employee was violating various Florida statutes forbidding sexual misconduct in the practice of medicine, as well as hospital policies requiring the presence of third parties during examinations).

Plaintiff asserts that the conduct he complained about to the Lee County investigator was done pursuant to a policy or practice of Defendants, or at the very least, was committed by employees acting within the scope of their employment. The factual allegations in the Amended Complaint bear this out. The purported illegal conduct all

occurred during working hours and in furtherance of Defendants' purported interests.  *See Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992) ("Under Florida law, an employee acts within the scope of his employment if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master.").  Plaintiff has thus presented a *prima face* case that he engaged in statutorily protected activity under the FWA.  Accordingly, the Court denies Defendants' motion to dismiss as to Count I.

**B.  Count II – Florida Statute § 39.03**

In Count II, Plaintiff alleges that Defendants violated Fla. Stat. § 39.203 by firing him for reporting possible abuse of the pregnant student to Florida's Department of Children and Families Services.  (Doc. #2 at ¶¶ 53-64).  As stated, Plaintiff told the School's assistant principal that a twenty-nine year old possibly impregnated a student.  When Plaintiff learned that the assistant principal did not report the matter to the Florida's Department of Children and Families Services, as required by law, he reported the suspected abuse himself.  (Doc. #2 at ¶ 15).  Plaintiff equates his firing – some seven months later – to that report.

Florida Statute § 39.203(2)(a) provides, in pertinent part, that no "employee of a facility serving children may be subjected to reprisal or discharge because of his or her actions in reporting abuse, abandonment, or neglect[.]"  If a person suffers a "detrimental change in [his] employment status" because he filed such a report, that person may bring a civil cause of action.  *Id.* § 39.203(2)(b).  And, "[a]ny detrimental change made in the . . . employment status of [a reporting] person, including, but not limited to, discharge, termination, demotion, transfer, or reduction in pay or benefits or work privileges, or

negative evaluations within a prescribed period of time shall establish a rebuttable presumption that such action was retaliatory." Id. § 39.203(2)(b); see also Norman v. Bright Horizons Family Sols., LLC, No. 8:12-cv-1301-T-17TBM, 2014 WL 272720, at *9 (M.D. Fla. Jan. 23, 2014).

Defendants move to dismiss Plaintiff's § 39.203 claim, arguing that he has not established a causal connection between reporting suspected child abuse and his firing. (Doc. #13 at 8-9). The Court agrees. Even reading the Amended Complaint in a light most favorable to Plaintiff, he offers no factual basis to establish a retaliatory discharge for his report. Plaintiff reported the suspected abuse approximately seven months before Defendants fired him. Such an extended gap in time cuts against a causal connection. To the extent Plaintiff also relies on "unfair and arbitrary performance reviews," "verbal rebukes," and "written discipline" to trigger § 39.203's rebuttable presumption of retaliation, he offers no factual details regarding such adverse actions. Accordingly, the Court grants Defendants' motion to dismiss as to Count II.

## C. Counts III and V – Disability Discrimination

In Counts III and V, Plaintiff alleges that Defendants discriminated against him because of his disability in violation of the ADA and FCRA when they denied his accommodation request of a "very brief leave." (Doc. #2 at ¶ 35). The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); see also Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). The FCRA likewise prohibits employment discrimination based on an individual's handicap. See Fla. Stat.

§ 760.10. Disability discrimination claims under the FCRA are analyzed under the ADA. See *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263-64 (11th Cir. 2007).

To state a *prima facie* case of disability discrimination, a plaintiff must show that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. See *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007). All three elements are at issue and addressed in turn.

For the first element, Plaintiff must show that he is disabled as that term is used the ADA. The statute broadly defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Walking, standing, and working are major life activities. *Id.* § 12102(2)(A).

Plaintiff claims to "suffer[] from an impairment of the musculo-skeletal system, which, when not in remission, substantially limits one or more of his [*sic*] major bodily functions, and which seriously impacts life activities that involve walking, working and movement." (Doc. #2 at ¶ 28). For their part, Defendants argue that Plaintiff has not alleged sufficient facts to show that he has a statutorily covered disability. (Doc. #13 at 10-11).

Setting aside the conclusory statements littered throughout the Amended Complaint, the only factual support that hints to Plaintiff having an ADA disability is that, because of a car crash in 1975, he developed an unnamed condition that somehow affected his musculoskeletal system. (Doc. #2 at ¶ 29). Since that accident, Plaintiff has used unspecified "assistive devices" to walk. (Doc. #2 at ¶ 29). Fast-forward forty-one

11

years later, Plaintiff allegedly suffered an injury while working at the School. Said injury flared his earlier musculoskeletal ailment, resulting in him needing assistive footwear. (Doc. #2 at ¶ 34).

These allegations are thin, at best. At a threshold level, Plaintiff fails to point to any recognized impairment. *See, e.g.,* 28 C.F.R. § 36.104 (listing a "physical impairment" to include, among other things, "contagious and noncontagious diseases and conditions such as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes . . . HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism[.]"). Instead, he relies on an unknown deficiency to his musculo-skeletal system. Compounding matters, he does not describe his workplace injury or the resulting restrictions, nor does he alluded to how these restrictions limit his activities of walking or working. *See May v. Am. Cast Iron Pipe Co.*, No. 2:12-cv-0285-SLB, 2014 WL 1043440, at *6 (N.D. Ala. Mar. 14, 2014). Such allegations are necessary to state a claim for disability discrimination. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). The Amended Complaint is also devoid of any facts regarding his "assistive footwear." At bottom, Plaintiff has not pled sufficient facts to state a plausible claim.

The Court reaches the above finding understanding that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under th[e statute], to the maximum extent permitted by the terms of th[e] statute." 42 U.S.C. § 12102(4). Although the ADA touts a minimal threshold for an individual to be considered

"disabled" under the ADA, Plaintiff has not provided a sufficient factual basis to meet that low burden.

Moving to the second *prima facie* element, Plaintiff must show that he is a "qualified individual" who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §§ 12112(a), 12111(8). Essential functions are "fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl*, 207 F.3d at 1365.

Plaintiff alleges that he is a "qualified individual with disabilities" and that Plaintiff could "perform the essential functions of his position." (Doc. #2 at ¶¶ 68-69). Defendants argue that Plaintiff's conclusory allegations are insufficient, and the Court agrees. Despite Plaintiff's protests that he need not plead anything more, his conclusory statements are not sufficient to meet the *Twombly/Iqbal* standard. Plaintiff must plead facts that support the allegation, not just his conclusions or beliefs.

Finally, even if Plaintiff sufficiently pled the two elements above, he still fails on the third, which requires Plaintiff to show that Defendants subjected him to unlawful discrimination because of his disability. In the context of a failure-to-accommodate claim, as is the case here, an employer discriminates against an individual with a disability by "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). An accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259-60 (11th Cir. 2001). What constitutes a reasonable

accommodation depends on the circumstances, but it may include, among other things, "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B).

The plaintiff bears the burden of identifying an accommodation and demonstrating that it is reasonable. *See Lucas*, 257 F.3d at 1255-56. If the plaintiff cannot do so, "the employer has no affirmative duty to show undue hardship." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016). "Moreover, an employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Id.*

Here, Plaintiff asked for a "very brief leave" as a reasonable accommodation for his alleged disability. Defendants denied this request because he would not sign, as a condition, some backdated memorandum. The next week, Defendants fired Plaintiff. It is clear there is a close temporal proximity between when Plaintiff requested an accommodation and when Defendants fired him. However, it is perplexing how a "very brief leave" would have enabled Plaintiff to perform the essential functions of his job as a high school math teacher. Without more, the Amended Complaint falls short of showing Defendants failed to provide him a reasonable accommodation. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999) ("[T]he initial burden of requesting an accommodation is on the employee. Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her.").

In sum, Plaintiff has failed to plead a *prima facie* case of disability discrimination. The Court, therefore, grants Defendants' motion to dismiss as to Counts III and V.

**D. Counts IV and VI – Retaliation**

In Counts IV and VI, Plaintiff asserts that Defendant retaliated against him for engaging in the protected activity of requesting an accommodation under the ADA and FCRA. Both statutes prohibit an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a). Courts assess such retaliation claims under the same framework as Title VII claims. *See Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997); *Barron v. Sch. Bd. of Hillsborough Cnty.*, 3 F. Supp. 3d 1323, 1331 (M.D. Fla. 2014).

To prevail on his retaliation claims, Plaintiff must show that (1) he engaged in a statutorily protected expression, (2) he suffered an adverse employment action, and (3) there was a causal link between the two. *See Lucas,* 257 F.3d at 1260. Plaintiff requested the "very brief leave" as a reasonable accommodation for his resurfaced musculo-skeletal condition. *See Frazier-White*, 818 F.3d at 1258 ("The first element may be met by a request for a reasonable accommodation."). Neither party disputes that Defendants fired Plaintiff, and did so only one week after Plaintiff requested the accommodation. At this preliminary stage, the Court is satisfied that Plaintiff has sufficiently pleaded a *prima facie* case of retaliation. Accordingly, the Court denies Defendants' motion to dismiss as to Counts IV and VI.

**E. Conclusion**

Based on the foregoing, the Court denies in part and grants in part Defendants motion to dismiss. The Court denies Defendants' motion as to Counts I, IV, and VI, but

grants as to II, III, and V.  Nevertheless, the Court will allow Plaintiff leave to file a Second Amended Complaint as is consistent with this order.

Accordingly, it is now

**ORDERED:**

(1) Defendants Accelerated Learning Solutions, Inc. and Community Education Partners, Inc.'s Motion to Dismiss Plaintiff Kenneth Williams' Amended Complaint (Doc. #13) is **GRANTED in part and DENIED in part**.

(2)  Plaintiff Kenneth Williams may file a Second Amended Complaint on or before **July 13, 2016**.

**DONE and ORDERED** in Fort Myers, Florida on this 29th day of June 2016.

*SHERI POLSTER CHAPPELL*
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record